United States District Court
Southern District of Texas
**ENTERED**
November 17, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL L. HYMES, ET AL., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-00515 |
| | § | |
| AMCAP MORTGAGE, LTD., ET | § | |
| AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion for Summary Judgment. *See* Dkt. 41. After reviewing the motion, the response, the reply, and the applicable law, I **RECOMMEND** that the motion be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On August 21, 2017, Carol L. Hymes and her daughter, Teairra L. Hymes, purchased a piece of real property in Harris County, Texas, commonly known as 3639 Arbor Trails Drive, Humble, TX 77338 (the "Property"). To finance the purchase of the Property, Plaintiffs executed a Note ("Note") in favor of AmCap Mortgage, Ltd. ("AmCap") in the amount of $163,190.00. The Note was secured by a Deed of Trust ("Deed of Trust") covering the Property. Lakeview Loan Servicing, LLC ("Lakeview") is the primary service provider, and Cenlar FSB ("Cenlar") is the subservicer.

The Deed of Trust provides that the "Borrower shall keep [the Property] insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and

1

floods, for which Lender requires insurance." Dkt. 41-3 at 5. Notwithstanding the language in the Deed of Trust, Plaintiffs allege that AmCap told them orally not to purchase flood insurance for the Property. Plaintiffs did not purchase flood insurance for the Property.

The failure to obtain insurance proved disastrous when Hurricane Harvey slammed into the Texas coast just days after Plaintiffs purchased the Property. The storm caused substantial damage, requiring a considerable expenditure of funds to repair the Property. Due to the unexpected financial outlay, Plaintiffs notified AmCap of their hardship and their inability to make the first loan payment, which was due on October 1, 2017.

AmCap sent Plaintiffs a forbearance letter on October 17, 2017, agreeing to temporarily suspend Plaintiffs' mortgage payments to "allow [Plaintiffs] the time and flexibility to manage the challenges affecting [their] ability to pay [their] mortgage due to the natural disaster." Dkt. 41-4 at 1. The October 2017 forbearance letter suspended Plaintiffs' monthly payment obligations under the Note from October 1, 2017, through December 1, 2017. The letter further stated that the forbearance would expire on January 1, 2018.

January, February, and March 2018 passed without a single loan payment from Plaintiffs. Nonetheless, AmCap sent Plaintiffs a second forbearance letter on April 4, 2018. In that letter, AmCap agreed to suspend loan payments from April 1, 2018, through June 1, 2018. The second forbearance period expired on July 1, 2018.

July 1, 2018 came and went without a single loan payment from Plaintiffs. On July 19, 2018, Plaintiffs finally submitted a payment equal to one month's payment under the

2

Note.  Because this payment was insufficient to bring the loan current, Cenlar immediately returned the payment.  One month later, on August 20, 2018, Plaintiffs submitted another payment equal to one month's payment under the Note.  Once again, Cenlar returned the payment because it was insufficient to bring the loan current.

In an effort to avoid foreclosure, Plaintiffs maintain that they sent a loan modification request to Defendants on September 25, 2018.  Defendants deny ever receiving that loan modification request.  On October 8, 2018, Defendants notified Plaintiffs that they were accelerating the loan and initiating foreclosure proceedings.  A foreclosure sale was scheduled to take place on December 4, 2018.  On November 20, 2018, Plaintiffs allege that they resubmitted the loan modification package they sent in September 2018.  Ten days later, Plaintiffs filed a lawsuit in state court to stop the noticed foreclosure sale set for December 4, 2018.  Defendants then agreed to postpone the sale until February 5, 2019.  But just days before the February 5, 2019 foreclosure sale, Plaintiffs obtained a temporary restraining order that stopped the noticed substitute trustee's sale from proceeding.  This lawsuit was then removed to federal court.

Once in federal court, Defendants filed a motion to dismiss, which was denied.  The district court then ordered Plaintiffs to submit a loan modification application to Defendants.  Plaintiffs contend that they did so on May 30, 2019, but insist that they never received a response from Defendants.

The live pleading is Plaintiffs' Second Amended Complaint.  In that pleading, Plaintiffs allege a laundry list of causes of action: breach of contract, fraud, violations of the Texas Deceptive Trade Practices Act ("DTPA"), statutory fraud in a real estate

transaction, negligent misrepresentation, dual tracking violations, violations of the Texas Debt Collection Act ("TDCA"), violations of the Fair Credit Reporting Act ("FCRA"), conspiracy, aiding and abetting, declaratory and injunctive relief.  Defendants have filed a motion for summary judgment, seeking to dismiss the entire case.  Defendants also seek to recover their attorney's fees incurred in defending the case.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. It provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the non-movant.  *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To defeat a motion for summary judgment, the non-movant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The non-movant's "burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  Rather, the non-movant "must identify specific evidence in the record and articulate how that evidence supports that party's claim."  *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).  In ruling on a motion for summary judgment, I must construe "the

4

evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg, Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019).

## ANALYSIS

### A.      Breach of Contract

Plaintiffs' Second Amended Complaint asserts a breach of contract cause of action, claiming that Defendants breached the two forbearance agreements.

Forbearance is defined as the "act of refraining from enforcing a right, obligation, or debt." *Forbearance*, Black's Law Dictionary (11th ed. 2019).  A forbearance agreement is simply a contract, and, as such, its terms "define the parties' contractual arrangement." *In re Tolliver*, 464 B.R. 720, 741 (Bankr. E.D. Ky. 2012).  "Inherently, a loan forbearance contemplates some sort of deferral of payments or suspension of collection remedies, and the parties are free to define how it works."  *In re Singer*, 469 B.R. 293, 297 (Bankr. W.D. Wis. 2012).  Forbearance agreements often "contemplate more than simply the temporary suspension of payments; they may also include waivers of various claims, the inclusion of additional collateral, or the reaffirmation of the underlying debt." *Id.*

The parties spend a lot of time in their summary judgment briefs disputing the meaning of the forbearance agreements' terms.  Defendants allege that the forbearance agreements require all suspended payments, along with the current month's payment, to be due in full at the end of the forbearance term.  Meanwhile, Plaintiffs contend "that the missed forbearance payments would be added to the end of the Loan term."  Dkt. 37 at 11. At the end of the day, it really does not matter who is correct.  It is undisputed that Plaintiffs

failed to make a single payment on the loan for the 10-month period between October 2017 and July 2018.  Under Defendants' interpretation, Plaintiffs are in breach because they failed to pay the October, November, and December 2017 mortgage payments, along with the January 2018 payment, when the October 2017 forbearance period expired on January 1, 2018.  Under Defendants' interpretation, Plaintiffs are also in breach because they failed to pay the October – December 2017 mortgage payments and January – June 2018 mortgage payments, along with the July 2018 payment, when the April forbearance period expired on July 1, 2018.  If I assume, on the other hand, that Plaintiffs' interpretation of the forbearance agreements is on target (that suspended payments would be tacked on to the end of the mortgage term), the fact remains that the October 2017 forbearance agreement expired on January 1, 2018, and Plaintiffs did not make monthly payments for January, February, or March 2018, as required.  By failing to make these payments, Plaintiffs breached the October 2017 forbearance agreement.  And Plaintiffs breached the April 2018 forbearance agreement when they failed to make up the outstanding payments from January, February, and March 2018 when that agreement expired in July.  It has long been the law in Texas that "a party to a contract who is . . . in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (quotation marks and citation omitted).  Applying this well-established principle here, Plaintiffs' breach of contract claim is unsustainable.

In a last-ditch effort to pursue a breach of contract claim, Plaintiffs assert that "AmCap [orally] agreed that [Plaintiffs] did not have to make the October [2017] payment and told [Plaintiffs] they would put [Plaintiffs] into a six[-]month forbearance program."

Dkt. 44-19 at 2; 44-20 at 2.  Under this reasoning, all loan payments were suspended from October 2017 through June 2018 (the six-month oral agreement covering the time period from October 2017 through March 2018, with the second forbearance agreement covering the time period from April 2018 through June 2018).  The problem with this argument is that the statute of frauds unquestionably renders such an oral agreement unenforceable.

The Texas statute of frauds provides that "[a] loan agreement in which the amount involved exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."  TEX. BUS. & COM. CODE § 26.02(b).  A loan agreement is any promise under "which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money . . . or to otherwise extend credit or make a financial accommodation."  *Id.* § 26.02(a)(2). "Texas state and federal courts have concluded that . . . both the original loan and any alleged agreement to modify the original loan are governed by section 26.02 and must be in writing."  *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012) (quotation omitted).  *See also Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 582 (W.D. Tex. 2012) ("An oral agreement to modify the percentage of interest to be paid, the amounts of installments, security rights, the terms of the remaining balance of the loan, the amount of monthly payments, the date of the first payment, and the amount to be paid monthly for taxes and insurance is an impermissible oral modification.").  Thus, even if Defendants did orally agree to a six-month forbearance, the statute of frauds would render that agreement unenforceable and preclude Plaintiffs from recovering on such a claim.

7

**B.**     **Fraud**

To maintain a fraud action under Texas law, Plaintiffs must show: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Plaintiffs allege that Defendants committed fraud by making the following four oral misrepresentations: 1) that they did not need to buy flood insurance; 2) that they were being considered for a loan modification that would prevent initiation of foreclosure proceedings; 3) that the payments suspended by the forbearance agreements would be added to the end of the loan; and 4) that the missed forbearance payments "were all due at the end of the forbearance period."  Dkt. 37 at 11.  None of these alleged misrepresentations survive summary judgment.

The first alleged misrepresentation—that "Plaintiffs did not need flood insurance and should not buy flood insurance"—flies in the face of the Deed of Trust, which specifically instructs Plaintiffs, as borrowers, to keep the Property insured.  Dkt. 37 at 11.  Accordingly, this fraud claim fails as a matter of law because "a party cannot justifiably rely on a misrepresentation that directly conflicts with the terms of the signed contract." *Mercedes-Benz USA, LLC v.  Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019).  *See also DRC Parts & Accessories, LLC v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858–59 (Tex.

App.—Houston [14th Dist.] 2003, pet. denied) ("[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law").

The second alleged misrepresentation—that "Plaintiffs were being considered for loan modification and that during such time foreclosure activity would cease"—does not constitute fraud because Plaintiffs have failed to show that it was false.  Dkt. 37 at 11.  In support of this claim, Plaintiffs point to letters received from Cenlar dated November 28, 2018; January 23, 2019; and January 25, 2019; in which Cenlar acknowledged receiving a loan modification request from Plaintiffs.  In each letter, Cenlar stated that if Plaintiffs submitted a complete loan package, foreclosure and collection activity would cease for 30 days to give Cenlar time to review the loan modification request.  Plaintiffs' fraud claim fails because there is absolutely no summary judgment evidence indicating that this representation was false.  Scourging the record, I am unable to find any evidence, no matter how small, that Defendants proceeded with foreclosure activity after receiving these letters in late 2018 and early 2019.  The only foreclosure dates Defendants set were for December 2017 and February 2018, long before the alleged misrepresentations at issue here.  Defendants are, therefore, entitled to summary judgment as to the second alleged misrepresentation.

The third and fourth alleged misrepresentations relate to Defendants' statements concerning Plaintiffs' obligations under the forbearance agreements.  Plaintiffs assert that they relied on Defendants' representations that "the missed payments from the forbearance program would be added to the end of the Loan," and that "the missed payments from the

forbearance program were all due at the end of the forbearance period." Dkt. 37 at 11.

These fraud claims, even if true, are barred by the economic loss rule, which provides that

"[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's

action is ordinarily on the contract." *Sw. Bell Tel Co. v. DeLanney*, 809 S.W.2d 493, 494

(Tex. 1991). The Fifth Circuit has further explained the economic loss rule as follows:

> Under this doctrine, a claim sounds in contract when the only injury is
> economic loss to the subject of the contract itself. In applying the rule, courts
> consider whether the defendant's conduct would give rise to liability
> independent of the fact that a contract exists between the parties. When no
> independent basis for liability exists, the rule applies.

*Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014) (internal

quotation marks and citations omitted). Because the rights and obligations of the parties

to the subject loan are governed exclusively by contract, the economic loss rule bars

Plaintiffs' fraud claims. *See Darvani v. Wells Fargo Bank, N.A.*, No. 4:10-cv-05181, 2012

WL 3527924, at *3 (S.D. Tex. Aug. 13, 2012) (holding that the economic loss rule barred

a fraud claim against a lender because "any complaints by Plaintiffs about Wells Fargo's

misrepresentations, or their failure to provide information relating to the loan or alleged

modification agreement, relate to the parties' contractual relationship, and cannot, as a

matter of law, form the basis of a fraud claim"). Accordingly, Defendants are entitled to

summary judgment as to Plaintiffs' fraud claims.

## C.    DTPA

Plaintiffs next assert a cause of action under the DTPA, asserting the same four

alleged misrepresentations that form the basis of their fraud claim. Summary judgment is

warranted here because Plaintiffs are not "consumers" under the DTPA.

To bring a cause of action under the DTPA, Plaintiffs must have standing as "consumers." TEX. BUS. & COM. CODE 17.50(a). The DTPA defines a consumer, in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." *Id.* at 17.45(4). Texas courts have consistently held that in order to establish consumer status under the DTPA, a plaintiff must show: (1) that she acquired goods or services by purchase or lease; and (2) "that the goods or services purchased or leased must form the basis of the complaint." *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987). Whether Plaintiffs are consumers under the DTPA is a question of law. *See Hous. Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 572–73 (Tex. App.—Austin 2003, no pet.).

In this case, Plaintiffs' DTPA claims arise from a loan transaction and relate to the alleged modification of that loan. This is problematic since "a loan transaction cannot be challenged under the DTPA because the plaintiff sought or acquired money, which is not a good or a service." *Whittier v. Ocwen Loan Servicing, LLC*, No. H-12-3095, 2013 WL 5425294, at *7 (S.D. Tex. Sept. 25, 2013).

Tellingly, Plaintiffs cannot point to a single case in which a borrower was permitted to pursue a DTPA claim against a mortgage lender relating to modification of loan terms. "Even in cases involving traditional mortgage loans obtained for the purpose of purchasing a house, 'subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'good or services' element of the DTPA.'" *Margolis v. James B. Nutter & Co.*, No. 1:18-CV-162, 2019 WL 4547059, at *4 (S.D. Tex. July 24, 2019) (quoting *Broyles v. Chase Home Fin.*, No. 3:10-

11

CV-2256-G, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011)).  *See also Montalvo*, 864 F. Supp. 2d at 575–580 (holding that a person seeking a mortgage-loan modification was not a consumer under the DTPA); *Cavil v. Trendmaker Homes, Inc.*, No. G-10-304, 2010 WL 5464238, at *4 (S.D. Tex. Dec. 29, 2010) (holding that "a mortgage or modification of a mortgage is not a good or a service under the DTPA").  Because Plaintiffs' DTPA claims do not involve goods or services, Plaintiffs are not consumers within the meaning of the statute and have no standing to bring a claim thereunder.  The DTPA claim, therefore, fails.

**D.      Statutory Fraud in a Real Estate Transaction**

Next, Plaintiffs allege that Defendants have committed statutory fraud in a real estate transaction under § 27.01 of the Texas Business & Commerce Code.  Plaintiffs can pursue a cause of action under § 27.01 by showing that the defendant made "false representation[s] of a past or existing material fact" or "false promise[s] to do an act" "for the purpose of inducing [the plaintiff] to enter into a contract."  TEX. BUS. & COM. CODE § 27.01(a).  This "statute, by its own terms, applies only to fraud in real estate or stock transactions."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008).  "A loan transaction, even if secured by land, is not considered to come under the statute."  *Id.* (quotation omitted).  Because a loan transaction is at issue here, § 27.01 does not apply.  Accordingly, summary judgment is appropriate on the statutory fraud claim under § 27.01.

**E.      Negligent Misrepresentation**

Next, Plaintiffs allege a negligent misrepresentation claim.  To succeed on a negligent misrepresentation claim under Texas law, Plaintiffs must show: "(1) a

representation made by a defendant in the course of its business or in a transaction in which

[they] ha[d] a pecuniary interest; (2) the representation conveyed false information for the

guidance of others in their business; (3) the defendant did not exercise reasonable care or

competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed]

pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, N.A.*

*v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653–54 (Tex. 2018) (internal quotation marks

and citation omitted).

Here, the purported negligent misrepresentations made by Defendants are identical

to the alleged misrepresentations forming the basis of Plaintiffs' fraud claim. As noted

above, Plaintiffs' fraud claim fails as a matter of law. For the same reasons, the negligent

misrepresentation claim also does not make the grade. *See Narvaez v. Wilshire Credit

Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010) (granting defendants' motion for

summary judgment on negligent misrepresentation claim where mortgagor's injuries were

"in no way independent" from the underlying contract with loan servicer and mortgagee,

meaning his claim sounded only in contract).

**F.    Dual Tracking Violation**

Plaintiffs contend that Defendants violated federal regulations with respect to "dual

tracking" by failing to properly process Plaintiffs' applications for loss mitigation while

pursuing foreclosure. *See* 12 C.F.R. § 1024.41. A loss mitigation application is a request

from a borrower to change the terms of a borrower's payment obligations to avoid

delinquency or foreclosure. Section 1024.41(g) prohibits dual tracking, which "occurs

when a lender actively pursues foreclosure while simultaneously considering the borrower

for loss mitigation options." *Jordan v. U.S. Bank Home Mortg.*, 820 F. App'x 314, 315 (5th Cir. 2020). Section 1024.41(a) provides for a private right of action pursuant to section 6(f) of the Real Estate Settlement Procedures Act ("RESPA") codified at 12 U.S.C. § 2605(f).

Although Plaintiffs bring their dual tracking claim against all Defendants, § 1024.41 "imposes duties only on servicers." *Trust v. Riddle*, 911 F.3d 799, 804 (5th Cir. 2018). Because AmCap was the lender on the loan, not the servicer, Plaintiffs cannot recover against AmCap on the dual tracking claim. The question then becomes whether the dual tracking claim against the two servicers, Lakeview and Cenlar, survives summary judgment.

Plaintiffs specifically allege that they submitted loss mitigation applications on September 25, 2018, and June 26, 2019; that Defendants failed to respond to those applications; and that Defendants pursued a foreclosure sale in violation of § 1024.41(g). The dual tracking claim arising out of the alleged June 2019 loss mitigation application falls flat because there is absolutely no summary judgment evidence suggesting that Defendants pursued foreclosure after receiving the June 26, 2019 loss mitigation package. To the contrary, the summary judgment record reveals that the only scheduled foreclosure dates were for December 2017 and February 2018, more than a year before Plaintiffs submitted the June 2019 loss mitigation application.

Turning to the dual tracking claim arising from the September 2018 loss mitigation application, Defendants advance several arguments as to why summary judgment is appropriate. First, Defendants argue that, although Plaintiffs claim they submitted a loss

mitigation application on September 25, 2018, Cenlar did not receive an application from Plaintiffs until November 28, 2018—less than a week before the foreclosure sale scheduled for December 4, 2018.  And, Defendants continue, liability for dual tracking violations attaches only if a loan servicer receives a loss mitigation application 37–45 days before a foreclosure sale.  *See* 12 C.F.R. § 1024.41(b)(2)(i).  Defendants next argue that Plaintiffs failed to submit a complete loss mitigation application, as required by RESPA.

Plaintiffs respond to both these points with competent summary judgment evidence that they timely submitted a complete loss mitigation application.  *See* Dkt. 44-19 at 2 ("We filled out the application for [loss mitigation foreclosure avoidance] programs and submitted it to CENLAR, along with the requested supporting documentation regarding the financial hardship and expenses incurred because of the storm."); Dkt. 44-20 at 2 (same); Dkt. 44-2 (loss mitigation application).  It is not my role to "make credibility determinations or weigh the evidence" when ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Instead, I am required to view all facts and inferences in light of the nonmoving party (Plaintiffs) and resolve all disputed facts in Plaintiffs' favor.  *See Boudreaux*, 402 F.3d at 540.  The summary judgment record presents a classic fact issue.  Defendants might eventually convince a jury that the loss mitigation application was submitted late and that it was incomplete.  But I cannot make that determination, as a matter of law, at this stage of the case.

Defendants also seek summary judgment on the basis that Plaintiffs have not shown any actual damages caused by the alleged dual tracking violation.  RESPA allows for actual

damages to the borrower and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance . . . in an amount not to exceed $2,000."  12 U.S.C. § 2605(f).  Proving actual damages is a necessary element to recovering under a RESPA claim.  *See Whittier v. Ocwen Loan Servicing, LLC*, 594 F. App'x 833, 836 (5th Cir. 2014) ("To recover, a claimant must show that actual damages resulted from a RESPA violation."); *Schor v. JPMorgan Chase Bank, N.A.*, No. 4:16-CV-00829, 2017 WL 3205714, at *3 (E.D. Tex. July 10, 2017) ("Because Plaintiff has not incurred and has failed to show any evidence of actual damages, his purported claims for violations of [RESPA] fail as a matter of law."); *Caballero v. Wells Fargo Bank, N.A.*, No. 3-11-CV-1385-O-BD, 2011 WL 6039953, at *2 (N.D. Tex. July 25, 2011) ("A plaintiff must allege and prove actual damages resulting from a RESPA violation.").

Plaintiffs aver that they have sustained actual damages, and provide the following list of alleged actual damages:

> repair of the Property, loss of personal property, rent and living expenses incurred while the Property was being repaired, Loan penalties and fees, damage to Plaintiffs' credit reputation, and mental anguish as well as incurring attorneys' fees and costs.

Dkt. 44 at 29.  Most of these alleged damages, however, are not actual damages recoverable under RESPA.  "[R]epair of the Property, loss of personal property, rent and living expenses incurred while the Property was being repaired" are all damages caused by Hurricane Harvey, not an alleged RESPA violation.  *Id.*  Plaintiffs would have incurred those expenses regardless of whether Defendants initiated foreclosure procedures. Likewise, "[l]oan penalties and fees [and] damage to Plaintiffs' credit reputation" do not

arise from any alleged violation of RESPA, but instead result from Plaintiffs' failure to pay the Note on a timely basis. *Id.* And the Fifth Circuit has explicitly held that attorney's fees and litigation expenses do not constitute actual damages under RESPA. *See Whittier*, 594 F. App'x at 837 (fees and expenses are not actual damages because "RESPA allows for fees and expenses *in addition* to actual damages").

Finally, Plaintiffs allege that they have suffered mental anguish damages. Although there is a split in authority within the Fifth Circuit on this issue, I have previously held that mental anguish damages are recoverable under RESPA. *See Garcia v. Loancare, LLC*, No. 3:17-CV-00343, 2018 WL 3614813, at *9 n.7 (S.D. Tex. June 25, 2018) ("RESPA is a remedial consumer-protection statute, and because statutes must be construed liberally in this context, mental anguish damages are included within RESPA's actual damages provision."). Although slight, there is some summary judgment evidence suggesting that the Plaintiffs have suffered mental anguish damages as a result of an alleged RESPA violation. *See* Dkts. 44-19 at 3 ("[D]ealing with the claims of default by Defendants, collections harassment and attempted foreclosures have caused me great stress, torment, suffering, anguish and anxiety."); 44-20 at 3 (same). In my view, this evidence is enough to avoid summary judgment and create a fact issue for the jury regarding Plaintiffs' dual tracking claim arising from the September 25, 2018, loss mitigation application.

## G.     TDCA

The TDCA provides a cause of action against creditors and debt collectors who engage in prohibited conduct while attempting to collect debts. *See* TEX. FIN. CODE § 392.403. Prohibited conduct includes threatening to take an action prohibited by law,

harassing and abusing the debtor, resorting to unfair or unconscionable means in collecting the debt, and misrepresenting the character, extent, or amount of debt. *See id.* at §§ 392.301–392.304.

> Plaintiffs posit that Defendants violated the TDCA by:
>
> attempt[ing] to collect amounts that were not due or should not have been due, represent[ing] to others that Plaintiffs were refusing to pay a debt, and misrepresent[ing] the extent and amount of debt and used other false representations or deceptive means to collect a debt.

Dkt. 37 at 15.

Plaintiffs' TDCA claim dies for the same reason their breach of contract claim fails. As Defendants point out: "Plaintiffs **were** in default under the terms of the Note, Deed of Trust, and forbearance [agreements].  Plaintiffs **did** refuse to make required payments. Plaintiffs cannot establish that they made the required payments."  Dkt. 41 at 28.  The TDCA expressly states that it "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."  TEX. FIN. CODE § 392.301(b)(3).  As such, the TDCA offers Plaintiffs no solace.

**H.     FCRA**

Next, Plaintiffs assert that Defendants violated the FCRA.  The FCRA provides that "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681-2(a)(1)(A).  Here, Plaintiffs contend that Defendants improperly told credit reporting agencies that Plaintiffs were in default on the

Note.  This cause of action goes nowhere.  As already discussed in detail above, Plaintiffs were undeniably in default under the Note.  Because Plaintiffs cannot establish that Defendants improperly reported that Plaintiffs were in default, the FCRA cause of action collapses.

## I.    Conspiracy/Aiding and Abetting

Plaintiffs also allege that Defendants are liable for civil conspiracy and aiding and abetting.  Generally speaking, Plaintiffs complain that Defendants had a meeting of the minds to commit wrongful acts and each Defendant assisted and encouraged the other Defendants to commit wrongful acts.

The essential elements of a civil conspiracy claim are: "(1) two or more persons; (2) an object[ive] to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  The elements of an aiding and abetting claim under Texas law are: (1) the primary actor committed a tort; (2) the defendant had knowledge that the primary actor's conduct constituted a tort; (3) defendant had intent to assist the primary actor; (4) defendant gave the primary actor assistance or encouragement; and (5) defendant's conduct was a substantial factor in causing the tort.  *See Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996).

Both civil conspiracy and aiding and abetting are derivative torts, meaning that liability exists only if Plaintiffs can establish a separate underlying tort claim on which the court may grant relief.  *See Homoki v. Conversion Servs.*, 717 F.3d 388, 402 (5th Cir. 2013) ("Civil conspiracy is a derivative tort; therefore, liability for a civil conspiracy depends on

participation in an underlying tort."); *Nguyen v. Watts*, 605 S.W.3d 761, 793 (Tex. App.—

Houston [1st Dist.] 2020, no pet.) ("[A]iding and abetting is a derivative tort—to the extent

it is an actionable tort in Texas—the trial court's proper grant of summary judgment on the

underlying tort serves to grant summary judgment on the aiding and abetting claim as

well."). Thus, Plaintiffs' claims for civil conspiracy and aiding and abetting "rise[] and

fall[] on whether [Plaintiffs] stated a claim on an underlying tort." *Meadows v. Hartford*

*Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007).

I have already recommended that summary judgment be granted on each of

Plaintiffs' tort claims: fraud, statutory fraud, and negligent misrepresentation. Because

Plaintiffs have failed to establish a cognizable claim on a separate underlying tort, their

civil conspiracy and aiding and abetting claims must be dismissed.[2]

## J.      Declaratory Relief and Injunctive Relief

At the end of the Second Amended Complaint, Plaintiffs assert claims for

declaratory relief and injunctive relief. Plaintiffs seek a declaratory judgment that

Defendants are not entitled to foreclose on the Property and shall not sell the Property at a

trustee's auction sale, that the missed payments from the forbearance program are to be

added to the end of the Note, and that Defendants shall immediately correct the information

reported to credit reporting agencies. As far as injunctive relief is concerned, Plaintiffs ask

---

[2] Plaintiffs additionally assert a vicarious liability claim, alleging that Defendants are responsible
for the acts of their respective employees, servants, agents, or representatives under the doctrines
of actual authority, *respondeat superior*, and apparent authority. Because the tort claims fail, the
vicarious liability claim fails as well.

for an order preserving the status quo during the pendency of this action and restraining Defendants from foreclosing and selling the Property.

Because this Court has already recommended dismissal of the underlying claims for relief that relate to the request for declaratory and injunctive relief, the declaratory relief and injunctive relief claims cannot survive. *See Davis v. Silver State Fin. Servs.*, No. H-13-1432, 2014 WL 713235, at *10 (S.D. Tex. Feb. 20, 2014) ("Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive.") (collecting cases); *Puig v. Citibank, N.A.*, No. 3-11-CV-0270-L, 2012 WL 1835721, at *17 (N.D. Tex. May 21, 2012) (stating that parties are not entitled to injunctive relief where "the court has dismissed each of their claims as a matter of law").

## K.    Attorney's Fees

The last issue I must address is Defendants' contention that they are entitled to recover their attorney's fees and costs under both the TDCA and the DTPA.

The TDCA provides that "[o]n a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant attorney's fees reasonably related to the work performed and costs."  TEX. FIN. CODE § 392.403(c).  Texas appellate courts have held that "bad faith" is "the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Campos v. Ysleta Gen. Hosp.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied). *See also Elbaor v. Sanderson*, 817 S.W.2d 826, 829 (Tex. App.—Fort Worth 1991, no writ).  Based on the summary judgment record before me, there is no evidence that Plaintiffs have acted in bad faith or for purposes of harassment.  The record reveals that Plaintiffs purchased a home at exactly

the wrong time—days before Hurricane Harvey wreaked havoc on the Texas Gulf Coast. They suffered significant financial hardship and filed this case seeking some relief. Although Plaintiffs are not going to prevail on the TDCA cause of action, such a claim was not brought for dishonest, discriminatory, or malicious purposes. Attorney's fees are not warranted under the TDCA.

Like the TDCA, the DTPA also provides a prevailing defendant the opportunity to obtain an award of attorney's fees. The DTPA states that "[o]n a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." TEX. BUS. & COM. CODE 17.50(c). This provision is a tad different from the TDCA in that Defendants are entitled to attorney's fees and court costs if a DTPA claim is groundless. Under Texas law, a claim is groundless if it has "[n]o basis in law or fact and is not warranted by good faith argument for the extension, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989) (quotation omitted).

In seeking to avoid summary judgment on the DTPA claim, Plaintiffs argue that when a loan is used for the purchase of real estate, the home buyer may qualify as a consumer. Although I do not ultimately agree with Plaintiffs' argument, I am reluctant to conclude that their position is groundless such that they should be responsible for paying all of Defendants' attorney's fees incurred in this case. The law is too murky. As one district court recently noted:

While it is a close call, this Court agrees with Defendants that Plaintiff is not a consumer under the DTPA. Texas state courts have struggled with finding a bright-line rule, but what is clear is that "a lender may be subject to a DTPA claim if the borrower's 'objective' is the purchase or lease of a good or service thereby qualifying the borrower as a consumer." *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984). Here, none of Plaintiff's evidence of alleged "deceptive trade practices pertain to the actual sales transaction or to a deceptive act related to the original financing of her home" and thus, plaintiff is not a consumer under the DTPA. *Reule v. M&T Mortg.*, 483 S.W.3d 600, 614 (Tex. App. 2015); *see also Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. 2007) ("Even if the claimant seeks or acquires a 'good' or 'service' as defined by the DTPA and subsequent case law, the claimant must additionally show that the good or service sought or acquired forms the basis of the party's complaint in order to qualify as a consumer and to bring a valid DTPA claim."); *Murphy v. Wells Fargo Bank, N.A.*, 455 S.W.3d 621, 630–31 (Tex. App. 2013), *rev'd in part on other grounds*, 458 S.W.3d 912 (Tex. 2015) (finding that appellants were not consumers under the DTPA because they were "seeking a loan to refinance their home mortgage and not the purchase of a new home"). Thus, Plaintiff's DTPA claims fail as a matter of law.

*Byrd v. Lakeview Loan Servicing, LLC*, No. 1:17-CV-620-DAE, 2020 WL 1529965, at *9 (W.D. Tex. Feb. 25, 2020). In sum, I believe Plaintiffs are wrong on the law, but readily admit that there is room for disagreement. I, therefore, recommend that Defendants' request for attorney's fees under the DTPA be denied.

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion for Summary Judgment (Dkt. 41) be **GRANTED** in part and **DENIED** in part. Specifically, I recommend that all of Plaintiffs' claims against AmCap be dismissed, and all of Plaintiffs' claims against Lakeview and Cenlar, except the dual tracking claim arising from the September 25, 2018 loss mitigation application, be dismissed.

At the end of their summary judgment response, Plaintiffs ask me to continue consideration of Defendants' Motion for Summary Judgment pending the outcome of Plaintiffs' application for mortgage assistance pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Plaintiffs' request is denied.  Defendants are entitled to have their summary judgment motion heard and decided promptly.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 17th day of November 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

24